28080. FENDER *v.* DROST.

346

Decided February 29, 1940.   Rehearing denied March 23, 1940.

*W. D. Lanier, Bussey & Fulcher,* for plaintiff in error.

*Isaac S. Peebles Jr., Nathan Jolles, Pierce Brothers,* contra.

Stephens, P. J.   George Drost brought suit against Ralph Fender to recover damages for personal injuries alleged to have been sustained as a result of the negligence of the defendant.   The plaintiff alleged that on the evening of November 19, 1938, he was a deputy sheriff of Richmond County and it became his duty to patrol the Milledgeville road, a State and Federal-aid highway in that county; that this road is paved with concrete a width of eighteen feet, with top-soil shoulders on each side of the pavement approximately six feet wide; that around 8:55 p. m. on that date the plaintiff received an official radio call directing him to go to a point on that highway about ten miles from the city limits of Augusta and investigate an automobile wreck; that the plaintiff and one Ridgeley proceeded to this point on the Milledgeville road where they found that an automobile being driven in an easterly

direction had skidded off the south side of the highway; that the plaintiff stopped his automobile opposite to the place where the automobile had skidded in the highway, discharged deputy sheriff Ridgeley so that he could prevent congestion of traffic, and then proceeded a short distance, approximately one hundred feet, westerly, and pulled off the pavement, parked his automobile on the top-soil shoulder off to the north of the highway approximately seven feet from the center thereof, and then went back towards the wreck; that when he reached the wreck he found that the defendant had arrived with his wrecker, turned it around and pulled the wrecked automobile out of the ditch and up on the shoulder of the highway, and the defendant was in the highway, approximately seven feet from the center with his wrecker and adjusting the "grappling to the wrecked car;" that the plaintiff upon finding that the defendant had gotten the wrecked car back upon the shoulder of the highway and was placing the wrecker in the highway with the view to jacking up the wrecked car, turned back and across from the direction of the south side of the highway and started to his automobile which was parked on the north shoulder and off the pavement, and when the plaintiff had reached the edge of the pavement, and approximately sixty feet from where his car was parked on the north side of the highway, he looked up the highway and saw a truck approaching about seventy feet up the road from him and from the direction in which the truck was headed; that it appeared to him that the truck was bearing down upon him, and he began to run from the pavement across to the shoulder approximately ten feet down towards the ditch, but he had made only a few steps before the truck was all but upon him and on the shoulder, and the plaintiff thereupon sought to spring from the shoulder across the ditch on the north side of the highway, and while in the act of so doing he was struck by the front of the truck; that the truck passed on and ran into his automobile just a few feet beyond the shoulder off the pavement on the right or north side of the highway.

It was further alleged, that the defendant's wrecker was parked on the pavement on the south side of the highway with two electric headlights shining "with dazzling and glaring rays blinding the driver of the oncoming truck" which was approaching from the east; that the defendant, "in addition to having the two powerful

electric headlights with dazzling and glaring and blinding rays down said highway, had a high-powered spot light which also was dazzling and glaring with blinding rays down said highway directly in the face of the driver of the oncoming truck, further blinding him;" that from where the defendant's wrecker was parked in the highway there is an upgrade "eastward towards Augusta," of approximately seven and one-half degrees, and that some sixty yards therefrom in the same direction the highway turns suddenly at "right angles from a southwesterly direction in a westerly direction," so that from the crest of the hill "was a straightaway up which said three powerful, dazzling and glaring headlights shone," blinding the driver of the truck, and "incapacitating him and making him unable to see" the plaintiff's position of peril "on the shoulder of said highway endeavoring to escape the danger from the oncoming truck;" that there was attached to this truck a trailer loaded with mules, and when Brown came upon this "straightaway, up which" such lights from the "defendant's wrecker were shining," he was blinded and unable to see down the highway, and so sought to pull to the right of the road, and applied his brakes so as to bring his truck to a stop, but before the truck was stopped it struck plaintiff inflicting the injuries sued for; that the plaintiff was at his post of duty as a deputy sheriff, and in the exercise of all ordinary care and diligence, and engaged in an effort to prevent any one from being injured by the blocking of the road or by passing automobiles and other traffic at this point, at the time he was injured, all of which was known to the defendant; that the defendant had knowledge of the plaintiff's dangerous and perilous situation, and knew that a failure on his part to dim the headlights of his wrecker would blind an approaching driver of another vehicle to such an extent as to prevent him from seeing the plaintiff; that the "bright, dazzling and glaring lights of defendant's wrecker did blind" Brown and prevented him from seeing the plaintiff, and caused him to drive his truck into the plaintiff; that the defendant's failure to dim the lights on the wrecker, and parking it as he did, were the efficient proximate causes of plaintiff's injuries; that the defendant's failure to dim such lights was the sole proximate cause of the plaintiff's injuries, and the defendant knew that the failure to dim the lights "was calculated to bring about such a dangerous situation with reference to petitioner as would

naturally result in his injury and actually resulted" in the plaintiff being injured; that at the time and place the plaintiff was in the exercise of all due care and caution, and could not have avoided his injuries by the exercise of ordinary care and diligence; that Brown, the driver of the approaching truck which struck the plaintiff, was at the time and place in question in the exercise of all ordinary care and diligence, and that the plaintiff's injuries resulted solely from the carelessness and negligence of the defendant as stated.

The defendant demurred to the petition on the ground that no cause of action was set forth against him, because it was not alleged that the defendant had violated any duty owed to the plaintiff, because it affirmatively appeared from the petition "that the proximate cause of said collision was not the alleged negligence of this defendant," because it affirmatively appeared from the petition "that the proximate cause of said casualty was the negligence of Thomas Brown, and because the petition affirmatively showed that the proximate cause of the casualty was the negligence of plaintiff." The defendant also demurred on various special grounds, and the material defects in the petition so pointed out were cured by amendment. The judge overruled the demurrer "on each and every ground thereof." The defendant excepted.

It is the duty of one operating a motor vehicle along a public highway in this State to have it equipped with "a suitable device for dimming or changing focus" of the headlights thereon, "so as to prevent dangerously glaring or dazzling rays from the lamps" thereof from affecting the eyesight of the driver of an approaching vehicle; and it is his duty to dim the lights or change the focus when it is necessary to do so to prevent such dangerously glaring or dazzling rays from affecting the eyesight of the driver of an approaching vehicle. A jury may infer that a failure so to do on the part of the driver of a motor vehicle, under certain conditions, would be negligence on his part. *American Bakeries Co.* v. *Johnson,* 59 *Ga. App.* 150 (9) (200 S. E. 485); Code, § 68-302. Such duty would rest on the driver of a motor vehicle whether it was being driven along the road or whether at the time it was parked on the side of the road. Where, as a direct result of the failure of one to have his automobile, while parked on the side of a public road in this State, equipped with "a suitable device for dimming

or changing focus" of the headlights or lamps thereon, and to dim or change the focus of such lamps from which "dangerously glaring or dazzling rays" are being projected, the eyesight of the driver of an approaching motor vehicle is momentarily blinded and he is therefore unable to see the dangerous situation of a pedestrian in the highway in front of him and just off of the pavement and on the shoulder of the highway on the right side to the driver of the approaching motor vehicle, and the driver of the approaching motor vehicle, being unable to see where he is going, thereupon pulls his motor vehicle to his right and off the paved portion of the highway and onto the shoulder, applying his brakes, but, just after passing the parked automobile, strikes the pedestrian before he can bring his motor vehicle to a stop, a jury would be authorized to find that the failure of the operator of the stationary automobile to have it equipped "with a suitable device for dimming or changing focus" of the headlights thereof, and his failure to dim his headlights so as to prevent the "dangerously glaring or dazzling rays" therefrom from momentarily blinding the driver of the oncoming motor vehicle, were the efficient proximate causes of the injuries sustained by the pedestrian who was struck by the approaching automobile. As stated in *Burnsed* v. *Spivey,* 52 *Ga. App.* 646, 649 (184 S. E. 410), "It is a matter of common knowledge that the glare of bright headlights of an automobile on a public highway at night will temporarily impair the vision of the driver of an approaching automobile." From the allegations of the petition it appears that the defendant, knowing this, left the bright and glaring lights on his parked wrecker burning and shining directly down the highway, so that they would necessarily shine directly into the eyes of the driver of an approaching motor vehicle. Except in plain and unmistakable cases it is the province of the jury to determine questions of negligence, proximate cause, etc., that is, whose negligence as well as what negligence caused the injury complained of.

It is contended by the defendant that the petition shows that the driver of the approaching motor truck was negligent in not bringing his truck to a stop, or in not checking its speed before he had gone far enough beyond the parked automobile of the defendant to strike the plaintiff. The defendant also contends that it appears that the driver of the approaching motor truck was negligent in turning the truck which he was driving so far to the right

that he ran off the paved portion of the highway and onto the shoulder, and thereupon struck the plaintiff. The defendant states that this negligence on the part of the driver of the truck contributed to the plaintiff's injuries. Conceding that this is true, and that this negligence on the part of the driver of the truck, together with the negligence of the defendant in failing to have his automobile equipped with a proper device for dimming or changing the focus of the lights thereof, and his failure to dim his lights on the approaching of the truck from the opposite direction, caused the plaintiff's injuries, the petition would not be subject to the general demurrer. A plaintiff, injured by separate and concurring acts of negligence of two persons, may bring an action against both or either of them.

This case is distinguishable from *Sprayberry* v. *Snow,* 59 *Ga. App.* 744 (1 S. E. 2d, 756). In that case it appeared that the lights of the parked automobile did not shine directly down the road and into the eyes of the driver of the approaching automobile. This court there held that the failure of the operator of the parked automobile to dim his light was not the efficient cause of the injury sustained by the plaintiff, a pedestrian. This case is not like *Buchanan* v. *Ellis,* 39 *Ga. App.* 840 (149 S. E. 100). In that case it did not appear that the owner or operator of the car whose lights temporarily blinded the plaintiff's son was negligent or in violation of law in not dimming the lights or in having on his car lights from which glaring and dazzling rays were projected. The existence of the blinding lights on the car of one of the defendants was alleged solely as a circumstance tending to show the situation of the plaintiff's son, and his inability to see the car of the other defendant which was parked in the highway without any tail light burning and with which the car of the plaintiff's son collided.

Even if the plaintiff, as deputy sheriff and patrol officer, was under a duty, as contended by the defendant, to cause the defendant to have his lights in proper condition and not so as to blind approaching drivers, or to cause the defendant to desist from illegal parking in the road, it can not be said as a matter of law, under the facts alleged in the petition, that this alleged failure of the plaintiff, even if negligence, was the proximate cause of his injuries. It is nevertheless a jury question, under the allegations of the petition, whether the plaintiff was injured as a result of the

352

negligence of the defendant. The petition set out a cause of action. The court did not err in overruling the demurrer.

*Judgment affirmed. Sutton and Felton, JJ., concur.*